**Billy Lee WALTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–98–00464–CR.**

Court of Appeals of Texas,
Austin.

July 29, 1999.

Kirk Hawkins, San Angelo, for Appellant.

Stephen H. Smith, District Attorney, Allison L. Williams, Assistant District Attorney, San Angelo, for State.

Before Justices JONES, B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

Appellant Billy Lee Walter appeals from the trial court's denial of his motion to suppress evidence and his subsequent conviction for the offense of possession of cocaine in an amount of four grams or more, but less than two hundred grams. *See* Tex. Health & Safety Code Ann. § 481.115 (West 1992). At a pre-trial hearing, appellant moved to suppress the evidence, claiming that it was seized during an illegal search. The trial court denied appellant's motion. Appellant waived his right to a jury, was found guilty by the court, and was sentenced to ten years in prison. In this appeal, appellant challenges the trial court's overruling of his motion to suppress and subsequent refusal to exclude the evidence at trial. We will reverse and remand the cause to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol duty on the evening of May 7, 1997, Sergeant Victor Vasquez of the San Angelo Police Department was approached just before 10:00 p.m. by an unknown person who witnessed suspicious activity in Mountain View Park. The witness told Vasquez that while he was playing basketball in the park, he observed what he believed to be a series of drug transactions. He reported that he saw several people drive up to the park, get out of their cars, and approach a man sitting at a picnic table next to the basketball court. These individuals would walk over to the park bathrooms, stay there briefly, and return to the man at the table. They would then get back into their cars and

leave the park, and the man would remain at the table. According to the record on appeal, Officer Vasquez did not obtain any description of the man at the picnic table or of the other individuals from the witness. Because the park was not within his own patrol district, Vasquez immediately called Officer Jeff Carrol of the San Angelo Park Police and asked him to investigate. Vasquez reported to Carrol that a suspicious individual was possibly conducting drug sales in the park area and relayed the witness's story. He instructed Carrol to use his own discretion in stopping any vehicles or approaching any individuals. In addition to the fact that the tip he was acting upon was a report from an unidentified citizen received secondhand from Officer Vasquez, Carrol had no description to help him identify any suspicious individual, and he had no information regarding any physical characteristics, age, race, clothing, or vehicle upon which to base a stop or detention.

Officer Carrol arrived about five to ten minutes after talking to Vasquez. He did not see anyone actually in the park, but did notice a pickup truck leaving the park area. There were no other vehicles traveling in the area. Carrol drove up behind the departing truck and stopped it after the driver failed to signal his intent to turn prior to one hundred feet of the intersection.[1] The officer identified appellant as the driver. When asked by Carrol where he was coming from and what he was doing, appellant replied that he was coming from Mountain View Park where he and his passenger had been playing basketball. Carrol testified that he was suspicious of appellant's story because appellant was wearing a long-sleeved button-down shirt, blue jeans, and cowboy boots, and he did not observe a basketball in the truck. The passenger, who also wore jeans, simi-

larly claimed that they were coming from the park where they had been playing basketball.

After verifying the identities of the two men, Carrol initiated a warrant check using appellant's license number. He also requested consent to search the truck, but appellant refused. Carrol then contacted Officer Miller, a canine handler from the San Angelo Police Department, and asked him to come to the scene and perform an exterior "sweep" of the vehicle with a drug-sniffing dog. Next, another officer arrived at the scene, apparently serving as Carrol's "back-up." At some point, appellant and the passenger got out of the truck.[2] Miller arrived within ten to fifteen minutes. Carrol testified that the warrant check had not yet been completed when Miller arrived, but that if the check had been completed and come back clear, he would not have continued to detain appellant.

Miller performed a routine preliminary visual check of the exterior of the truck to ensure that the dog would not be harmed during the search. He testified that he could easily see inside the vehicle during his exterior check, because both appellant and the passenger had left their doors open when they got out of the truck. When he came around to the passenger side, Miller squatted down and saw a clear plastic bag on the floorboard between the door and the seat. The bag contained a green leafy substance that Miller believed to be marihuana. He notified Carrol, who seized the bag and searched appellant. In appellant's shirt pocket, Carrol found a rather large clear bag of an off-white powdery substance that he believed to be cocaine.[3] Office Miller then searched the truck with the dog and found a brick of

---

1. Appellant does not contend that the initial traffic stop for failure to signal was invalid or constitutionally improper.

2. It is not clear from the record exactly when appellant and his passenger got out of the truck. However, it appears that they were already out by the time Officer Miller arrived.

Miller testified at trial that when he arrived at the scene, the two men were sitting on or by the tailgate of the truck, and both doors to the truck were open.

3. Laboratory tests confirmed that the powdery substance was cocaine.

marihuana and various other drugs, which Carrol also seized.

In his sole point of error, appellant claims that the trial court erred in (1) failing to sustain his motion to suppress, and (2) admitting at trial evidence of the illegally seized cocaine. Appellant argues that Officer Carrol did not have reasonable suspicion to continue to detain him after the traffic stop, and therefore the seizure of the cocaine was the result of an illegal detention and search of his person and vehicle under the Fourth Amendment to the U.S. Constitution. U.S. Const. Amend. IV.

## DISCUSSION

The United States Supreme Court has held that determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "[T]he legal rules for probable cause and reasonable suspicion acquire content only through application." *Id.*(quoting *Ornelas*, 517 U.S. at 697, 116 S.Ct. 1657). Independent review has been deemed necessary so that appellate courts can maintain control of and clarify the basic legal principles presented, unify precedent, and provide a defined set of rules for law-enforcement officers. *See Loserth v. State*, 963 S.W.2d 770, 773 n. 2 (Tex. Crim.App.1998) (citing *Ornelas*, 517 U.S. at 697, 116 S.Ct. 1657). In addition, *de novo* review prevents the varied results under similar facts that sweeping deference to the trial court would yield. *See id.*

■ The appellate court should give due deference to the trial court when reviewing the trial court's ruling on a mixed question of fact and law. *See Guzman*, 955 S.W.2d at 89. If the trial court's ruling turns on an issue of credibility of a witness, the appellate court should give considerable weight to the trial court's judgment. *See id.* However, the appellate court should conduct a *de novo* review when the trial court is not in an appreci-

ably better position than the appellate court to decide the issue. *See Miller v. Fenton*, 474 U.S. 104, 114–16, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *Guzman*, 955 S.W.2d at 87. When the mixed question of fact and law presented does not turn on an evaluation of credibility and demeanor, the question is subject to *de novo* review. *See Loserth*, 963 S.W.2d at 773.

■ A trial court's ruling on a motion to suppress lies within the sound discretion of that court. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). The trial court is the sole observer of the testimony and demeanor of the witnesses; the trial court makes decisions regarding credibility of the witnesses and the weight that should be given to their testimony. *See id.* Therefore, in reviewing such a ruling, the appellate court asks only whether the trial court improperly applied the law to the facts. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The appellate court does not engage in its own factual review, but instead decides whether, in viewing the record in the light most favorable to the trial court's ruling, the trial court's findings are supported by the record. *See id.* In this case, both Officer Carrol and appellant testified at the hearing on the motion to suppress. Appellant disputed the officer's testimony by saying that the warrant check came back within five to eight minutes, at which point Officer Carrol asked him to step out of the car and requested consent to search the vehicle. Appellant testified that when he refused to consent, Carrol called for the canine unit and then patted appellant down and found the cocaine in his shirt pocket. In denying the motion, however, the trial court found Officer Carrol's testimony to be more credible. Therefore, giving weight to that determination, we review the question of reasonable suspicion *de novo*. Taking Officer Carrol's testimony as true, we must determine whether he had adequate reasonable suspicion to detain and subsequently search appellant and

his vehicle without violating the Fourth Amendment.

■ Officer Carrol's stop of appellant was valid. Because he saw appellant commit a traffic violation by failing to properly signal before a turn, Carrol had an objective basis for stopping the truck. *See* Tex. Transp. Code Ann. § 545.104 (West 1996). His subsequent detention of appellant pursuant to that violation is considered to be valid as well:

> As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person for *that violation,* regardless of whatever the usual practices or standards of the local law enforcement agency are and regardless of the officer's subjective reasons for the detention.

*Garcia v. State,* 827 S.W.2d 937, 944 (Tex. Crim.App.1992) (emphasis original). Officer Carrol evidently suspected that appellant was involved in drug activity in the park when he stopped appellant for failing to signal, but this fact alone does not render the traffic stop improper. Stops and detentions that pertain to the original violation do not exceed the bounds of the Fourth Amendment. *See id.* However, Officer Carrol must have had some additional reason, other than the initial traffic violation, to continue to detain appellant and call for the canine sweep.

■ The State sets forth two alternative theories as to why Officer Carrol's actions were reasonable and justified. First, the State argues that it is reasonable for an officer to check the validity of a presented driver's license, to check the driver for outstanding warrants, and to detain the driver for as long as is necessary to do so. *See Davis v. State,* 947 S.W.2d 240, 245 n. 6 (Tex.Crim.App.1997). A warrant check can be performed during a valid traffic stop. *See id.; 1979 Pontiac Auto. v. State,* 988 S.W.2d 241, 243 (Tex. App.—Eastland 1998, no pet.). According to Officer Carrol, a warrant check is a routine part of every traffic stop he makes. He testified that he initiated a warrant check on appellant and on the passenger

after identifying them, but before contacting Officer Miller. He testified further that the checks had not yet been completed when Officer Miller arrived with the dog, but if they had come back clear before Miller arrived, he would have had no choice but to let appellant go. The State argues that a police officer has the discretion to run a warrant check during a temporary investigative detention. *See Davis,* 947 S.W.2d at 245 (citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

■ The State relies on *1979 Pontiac Automobile* for the proposition that a police officer may detain a person for a canine sweep whether or not the officer has reasonable suspicion that the person may possess narcotics. *See 1979 Pontiac Auto.,* 988 S.W.2d at 243. However, this holding contradicts other Texas authority. *See Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.—Fort Worth 1998, pet. ref'd) (exterior canine sweep of vehicle requires reasonable suspicion that automobile contains narcotics) (citing *Crockett v. State,* 803 S.W.2d 308, 310–11 (Tex.Crim.App. 1991) (reasonable suspicion required for canine sniff of railway passenger's luggage)). While a canine sweep does not constitute a search within the meaning of the Fourth Amendment, a canine sweep can be performed during an investigative detention only if there is reasonable suspicion of criminal activity to continue that detention. *See United States v. Place,* 462 U.S. 696, 706–07, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see also Davis,* 947 S.W.2d at 245. An investigative detention not based on reasonable suspicion violates the Fourth Amendment. *Davis,* 947 S.W.2d at 243.

Detaining a person while a warrant check is being run has been held not to violate the Fourth Amendment. *See id.* at 245. However, calling for a canine sweep to be performed in the meantime exceeds the bounds of what a police officer may do in a stop for a traffic violation without reasonable suspicion. *See Mohmed,* 977

S.W.2d at 628. We believe that *Mohmed* correctly states the law and that *1979 Pontiac Automobile* does not; we therefore follow *Mohmed* and *Crockett* in rejecting the State's argument that a police officer does not need reasonable suspicion to conduct a canine sweep.

■ The facts of the present case are somewhat unusual in that appellant was validly stopped by the Officer Carrol for a traffic offense, but at some point the nature of the detention changed to a drug-trafficking investigation. Our analysis is aided by analogizing Fourth Amendment law applied in the situation of a *Terry* frisk, which, like a canine sweep, is a lesser Fourth Amendment intrusion than a full search. *See Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the United States Supreme Court stated that where a police officer observes unusual conduct which leads him reasonably to conclude that criminal activity may be afoot, and he reasonably believes that the suspected persons may be armed, the officer may pat down their outer clothing to search for weapons. *See id.* at 30, 88 S.Ct. 1868. Both elements of *Terry*—suspicion of criminal activity and reasonable belief that the suspect may be armed—are necessary to uphold a warrantless frisk. *See* Wayne R. LaFave, *Search and Seizure* § 9.5(a) (3d ed.1996). This rule shows the error in the State's position that because the canine sweep took place before the warrant check was complete, there was no further intrusion on appellant's constitutional rights. If this were true, officers could freely frisk individuals not suspected of any criminal activity as long as they did so while a warrant check was pending. As with a canine sweep, the State could argue that (1) a frisk is a lesser intrusion under the Fourth Amendment than a full search incident to arrest, and (2) the frisk produced no temporal detention in addition to the traffic stop. Neither common sense nor Texas law supports this approach, and we believe that a canine sweep performed in the absence of reasonable suspicion is not rendered constitutional simply because it did not result in a longer period of detention.

■ The State's second theory is that Officer Carrol had reasonable suspicion to justify the canine sweep, even if he had not run a warrant check on appellant. The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures. *See United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). It is well-established that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *See Crockett*, 803 S.W.2d at 311. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Doyle v. State*, 779 S.W.2d 492, 494 (Tex.App.—Houston [1st Dist.] 1989, no pet.). Since a temporary detention represents a lesser intrusion on an individual's security and integrity than a formal arrest, a police officer's reasonable suspicion of criminal activity warrants a temporary detention. *See Perez v. State*, 818 S.W.2d 512, 515–16 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). Nevertheless, even a temporary detention such as a canine sniff of a train passenger's luggage is not permissible unless the circumstances upon which the officer relies objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *See Crockett*, 803 S.W.2d at 311.

■ In *Terry v. Ohio*, the United States Supreme Court set forth the guidelines for determining whether an investigative detention is reasonable: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first

place. *See Terry,* 392 U.S. at 20, 88 S.Ct. 1868; *see also Davis,* 947 S.W.2d at 242.[4] In order to determine whether an officer was reasonable in his initial action, we ask whether there were specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the initial intrusion. *Terry,* 392 U.S at 21, 88 S.Ct. 1868. Moreover, we use an objective standard to determine whether the facts available to the officer at the moment of the seizure or the search "warrant[ed] a man of reasonable caution in the belief" that the action taken was appropriate. *Id.* at 22, 88 S.Ct. 1868. The reasonableness of a temporary detention must be considered in terms of the totality of the circumstances according to the *Terry* standard. *See United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997). The articulable facts must create some reasonable suspicion that an activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *See Davis,* 947 S.W.2d at 244. The evidence must be more than merely relevant; it must be of sufficient probative strength to support a reasonable suspicion of criminal misconduct. *See Crockett,* 803 S.W.2d at 311.

■■■■■ A search that is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. *See Terry,* 392 U.S. at 18, 88 S.Ct. 1868. In order to determine whether the scope of the detention was reasonable, we ask whether the continued detention was necessary to effectu-

ate the purpose of the stop. *See Davis,* 947 S.W.2d at 245 (citing *Royer,* 460 U.S. at 500, 103 S.Ct. 1319). The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *See id.* However, the United States Supreme Court has declined to adopt any bright-line rule in evaluating whether a continued detention is reasonable: common sense and ordinary human experience must govern over rigid criteria. *See Sharpe,* 470 U.S. at 685, 105 S.Ct. 1568. The question is not simply whether some other alternative method of investigation was available, but whether the police acted unreasonably in failing to recognize or pursue it. *See id.* at 687, 105 S.Ct. 1568.

■■■■ Officer Carrol stopped appellant for a valid reason and detained him because he had received a report of suspicious activity possibly involving narcotics in Mountain View Park. We must evaluate whether the totality of the circumstances gave rise to articulable facts and rational inferences from those facts which would support reasonable suspicion for Officer Carrol to convert a traffic stop into a drug-trafficking investigation. *See Valencia v. State,* 820 S.W.2d 397, 400 (Tex.App.— Houston [14th Dist.] 1991, pet. ref'd). Although Carrol saw no one in the park, he observed appellant driving away from the park area and saw him commit a traffic violation. Upon asking appellant routine traffic-stop questions, Carrol became suspicious because appellant's manner of dress did not square with his story that he had been playing basketball in the park. Appellant was dressed in a long-sleeved shirt, jeans, and boots; he was not dressed in clothes that a person would normally wear to play basketball.[5] The State bases

---

**4.** Appellant does not claim that his detention was a violation of the search and seizure provision of the Texas Constitution. Tex. Const. art. I, § 9. He appeals only under the Fourth Amendment to the U.S. Constitution. However, we note that the Texas Constitution follows the federal standard for an investigatory detention as set out in *Terry. See Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App.),

*cert. denied,* —— U.S. ——, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997).

**5.** The State also contends that the fact that there was no basketball in appellant's vehicle shows that appellant's claim of playing basketball was evidently untrue. While the absence of a basketball tends to support the inference that appellant was lying, we do not

its argument that the canine sweep was justified on the combination of the report of possible drug activity and appellant's suspicious story. Appellant argues that there is nothing in the record that shows any actions, circumstances, or conditions that rise to the level of reasonable suspicion.

■ Allowances are made for the fact that an officer must make hasty decisions under tense and uncertain circumstances. *See Rhodes,* 945 S.W.2d at 118. However, under the present circumstances, we find that Officer Carrol did not act reasonably. At the time he stopped appellant for the traffic violation, Carrol had insufficient evidence to connect appellant with suspicious activities in the park. The report relayed through Officer Vasquez did not contain any details or description that connected appellant to the man seen by the informant at the park table; it came not from an informant of proven reliability but from an unidentified citizen who flagged down Vasquez at a convenience store. An anonymous tip can provide sufficient reasonable suspicion for a temporary investigative stop only if it contains sufficient details which are subsequently corroborated. *See Guzman v. State,* 955 S.W.2d 85, 91 (Tex. Crim.App.1997) (citing *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Officer Carrol had no details from the tip to corroborate. Carrol attempted to search appellant's vehicle when appellant responded that he had been in the park in the vicinity of the basketball court and because his style of dress did not appear to match his claim of playing basketball. When appellant refused to consent to the search, Carrol called for the canine unit to perform an exterior sniff in furtherance of his investigation of narcotics trafficking. The totality of the present circumstances did not give rise to sufficient reasonable suspicion that these two men were involved in criminal activity.

Various factors have been held to support reasonable suspicion of drug activity to warrant further questioning and the

find that it has great bearing in determining

calling of a canine unit, even when the initial stop is for a traffic violation. *See United States v. Finke,* 85 F.3d 1275, 1282 n. 4 (7th Cir.1996) (prior narcotics convictions, use of a rental car, and nervousness); *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994), *cert. denied,* 514 U.S. 1113, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995) (perspiration, evasiveness in answering questions, possession of a pager, and odor of a masking agent); *United States v. Shabazz,* 993 F.2d 431, 433 (5th Cir.1993) (false identification and inconsistent stories); *Josey v. State,* 981 S.W.2d 831, 837–38 (Tex.App.—Houston [14th Dist.] 1998, rev. refused) (car parked in middle of the street and plastic bag containing money found in car); *Mohmed,* 977 S.W.2d at 628 (nervousness and odor of drugs). In each of these cases, however, the factors supporting reasonable suspicion were known to be common to drug sellers or supported a pattern of drug activity. When used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion. *United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The officer must have specific, articulable facts that, in light of the officer's experience and general knowledge, lead the officer to the reasonable conclusion that criminal activity is underway and that the detained person is connected with the activity. *See Perez,* 818 S.W.2d at 516 (citing *Holladay v. State,* 805 S.W.2d 464, 472–73 (Tex.Crim.App. 1991)) (officer's experience with drug trafficking surveillance combined with particular facts supported reasonable suspicion). The facts in this case do not support Officer Carrol's conclusion that appellant was involved in criminal activity.

Several independently inconclusive factors in combination undoubtedly create reasonable suspicion of criminal activity in

whether Officer Carrol acted reasonably.

many cases. In *Alexander v. State*, two police officers observed Alexander in his car in a city park three hours past the curfew established by a city ordinance. *See Alexander v. State*, 879 S.W.2d 338, 342 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). The court held that the officers were justified in being initially suspicious that Alexander and his companion were committing criminal trespass and in becoming more suspicious when they approached appellant and saw him trying to hide something under the seat. The totality of the circumstances in *Alexander* yielded enough articulable facts to constitute reasonable suspicion to detain appellant. *See id.* In this case, Officer Carrol did not witness any activity by appellant that would suggest criminal behavior, such as moving to conceal something or trespassing in a city park after curfew.

In *Doyle v. State*, the court held that reasonable suspicion existed where an officer received specific information from an informant that the Doyles had marihuana in the trunk of their car. *See Doyle*, 779 S.W.2d at 495. The officer was able to verify the location, make, and license of the car as consistent with the informant's story before he stopped the car for further investigation. *See id.* The court held these to be sufficient articulable facts to justify detention. *See id.* In this case, Officer Carrol was not acting upon information that specifically identified appellant or his vehicle. The testimony that appellant had been in the park and his story about playing basketball when he was not dressed to play do not combine to establish sufficient articulable facts to indicate that appellant specifically was involved in drug activity.

The temporary detention of an automobile to allow an olfactory inspection by a police dog trained to detect the odor of illegal drugs does not violate the Fourth Amendment when based on a reasonable suspicion that the automobile contains narcotics. *See Mohmed*, 977 S.W.2d at 628. However, the suspicion in *Mohmed* was reasonably based on the odor of burned marihuana coming from the car. *Glenn v.*

*State*, 967 S.W.2d 467, 474 (Tex.App.—Amarillo 1998, pet. dism'd), is also distinguishable. Acting upon an anonymous tip giving specific details about Glenn's drug dealing activities, the officers detained Glenn in order to corroborate the details of the tip. They called for a drug detection dog when Glenn refused the officers' request to search his vehicle after they had corroborated the tip. The dog arrived within about forty-five minutes and indicated that there were drugs in the car. The officers then searched the car and found the drugs. The court held that because the officers were acting upon reasonable suspicion of drug activity, both the canine sweep and the ensuing search were legal. *See id.* at 472–74. From the reporter's record in this case, it appears that appellant was stopped for no longer than about twenty minutes before Officer Miller arrived and saw the bag of marihuana on the floorboard. However, Officer Carrol's detention of appellant was not reasonably related in scope to the circumstances that justified the interference in the first place. Because Officer Carrol was not acting upon reasonable suspicion, his decision to call for the canine sweep was unreasonable. *See Sharpe*, 470 U.S. at 686, 105 S.Ct. 1568.

In cases where no articulable facts existed to support reasonable suspicion, courts have found that such detentions violate the Fourth Amendment. *See Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (officers lacked reasonable suspicion to stop Brown just because he looked suspicious, was in area known for heavy drug traffic, and they had never seen him there before); *Davis*, 947 S.W.2d at 245 (officer clearly had effectuated the purpose of the stop once he determined that Davis was not intoxicated, and his opinion that Davis did not appear to be someone who was on a business trip was not supported by any articulable facts); *Crockett*, 803 S.W.2d at 312 (while police officers testified Crockett behaved suspiciously in purchasing ticket and walking to train, the officers had no reason to believe that his behavior was

typical of drug couriers) (citing *Sokolow*, 490 U.S. at 10, 109 S.Ct. 1581). Similarly, Officer Carrol's actions in this case were based on insufficient articulable facts. After the initial stop, the combination of factors relied upon by the State fail to give rise to reasonable suspicion of drug activity sufficient to justify calling for a canine sweep.

Under the totality of the circumstances, Officer Carrol could not reasonably suspect appellant of criminal activity. Appellant has shown that his constitutional rights were violated. His sole point of error is sustained.

## CONCLUSION

We hold that the trial court erred in refusing to suppress evidence of the cocaine. Accordingly, the trial-court judgment is reversed and the cause is remanded.