**Hector CASTRO, Appellant,**

v.

**The STATE of Texas, State.**

**No. 02–05–210–CR.**

Court of Appeals of Texas, Fort Worth.

Aug. 10, 2006.

Discretionary Review Refused
Nov. 22, 2006.

Tim Copeland, Abilene, for Appellant.

Stephen E. Bristow, District Atty., Graham, for State.

Panel F: CAYCE, C.J.; HOLMAN and McCOY, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Hector Castro appeals his conviction for the offense of manufacture of methamphetamine in an amount of 4 grams or more, but less than 200 grams. After the trial court denied his motion to suppress the methamphetamine that was found in a bag in the front seat of a car in which Appellant was a backseat passenger, Appellant entered an open plea of guilty, and the trial court assessed punishment at sixty years' confinement and a $1,000 fine, and gave him permission to appeal the ruling on the motion to suppress.[1]  In his sole issue on appeal, Appellant challenges

---

1. The trial court's judgment recites that this is a plea bargain case, and the trial court's certification of Appellant's right to appeal states this is a plea bargain case and the court has given Appellant the right to appeal the ruling on the motion to suppress.  In fact, the record reflects that there was no plea bargain agreement, but the court did grant Appellant permission to appeal from the denial of his motion to suppress.

the denial of his motion to suppress. We reverse and remand.

## BACKGROUND

Appellant filed a motion to suppress all illegally seized evidence, including items taken by police from a motor vehicle in which he was a passenger in Olney, Texas on July 19, 2004, after which he was arrested for the instant offense.[2] On May 18, 2005, the trial court held a hearing on Appellant's motion. The State's contention at the hearing was that Appellant did not have standing to challenge the legality of the stop of the vehicle because Appellant was not the owner of the vehicle, it was not loaned to him, and he was not in control of the vehicle but was merely a passenger. Appellant's counsel agreed that Appellant was not the owner or in control of the vehicle, but informed the court that counsel believed that the arresting officer would testify that Appellant had in fact claimed an ownership interest in the black bag found in the vehicle. Therefore, Appellant's counsel argued that Appellant had standing to challenge the legality of the stop of the vehicle.

Officer Frankie Bailey was the sole witness to testify at the suppression hearing. He stated that on July 19, 2004, he worked for the Young County Sheriff's Department and was assigned to the Cross Timbers Narcotics Task Force. On that day, he was contacted by the Olney Police Department for assistance with a possible drug investigation. He was told that a homeowner had called the Olney Police

Department because, as he was in the process of evicting Appellant from a residence, the homeowner found a black bag inside the house. The homeowner went to the police department to get help; the police called Officer Bailey, who subsequently arrived at the house.[3] The officer answered affirmatively when asked whether the Olney Police Department informed him of "these course of events." When asked "who might be connected with that lab or those items found in that residence" and who he suspected, he answered Appellant.[4]

Officer Bailey then advised the Olney Police Department "of the information [he] had with [Appellant]" and requested they be on the lookout for him. The officer was later notified by the Olney Police Department that Appellant had been located. When Officer Bailey got to Appellant's location, he was advised by Sergeant Loeffert that at the time of the stop of the vehicle in which Appellant was riding, the black bag was located on the front floorboard of the vehicle, and Appellant was a passenger in the back seat, crouched down with a jacket over his head. Officer Bailey acknowledged that he was not present when the vehicle was stopped, but he "was told the reason for the traffic stop was failure to signal a lane change." When asked upon cross-examination whether any failure to signal a lane change is a violation of the law, he responded "[w]ithin a hundred feet before turning," but admitted he was not present to see the driver's signaling or what the driver was doing.

---

2. Appellant challenged the alleged illegal search under the United States and Texas constitutions and the Texas Code of Criminal Procedure.

3. The officer was not asked whether the black bag was still inside the residence when he arrived. In his argument to the trial court, the prosecutor stated that when the homeowner returned to the residence with the po-

lice, the black bag that he had previously observed was gone.

4. The record from the suppression hearing does not indicate what, if any, items were found in the black bag or in the residence, and whether there was in fact a "lab" located in the residence.

At the conclusion of the brief hearing, the trial court requested the parties each submit a brief on the issue of Appellant's standing to complain of the search of the vehicle. Both sides filed trial briefs, but the record does not contain any subsequent ruling on the motion by the court, nor were any findings of fact or conclusions of law filed by the court. Nonetheless, both parties agree on appeal that the trial court at least implicitly overruled the motion.

■■■ The appellate record must show that the trial court ruled on the motion either expressly or implicitly. *See* Tex. R.App. P. 33.1(a)(2)(A); *Gutierrez v. State*, 36 S.W.3d 509, 511 (Tex.Crim.App.2001). As noted by the State, a trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling. *Rey v. State*, 897 S.W.2d 333, 336 (Tex.Crim.App. 1995).

■ Five days after the hearing on the motion to suppress, Appellant entered his guilty plea, and the court found him guilty. The court then stated that it would proceed to punishment, but before the punishment hearing the court stated, "And, Mr. Smith [Appellant's trial attorney], I'm relatively sure that you're going to appeal the Court's ruling on the Motion to Suppress, so for purposes of the record, you do have the Court's consent to appeal that decision." Accordingly, we agree with the parties that a reading of the record reflects that the trial court implicitly denied Appellant's motion to suppress.

■ We disagree with the State's contention on appeal that any alleged error regarding the denial of Appellant's motion to suppress has not been preserved for appellate review. Appellant filed a motion to suppress any and all evidence acquired as a result of the stop and search of the car in which he was a passenger; at the hearing, the trial court heard argument and evidence; and the court subsequently implicitly denied the motion and permitted Appellant to appeal the court's ruling. There is no indication that the trial court was not sufficiently aware of the grounds upon which Appellant sought to suppress the evidence made the basis of the charges against him. *See* Tex.R.App. P. 33.1(a)(1).

## MOTION TO SUPPRESS

### *Standard Of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.-Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.-Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim.App.2005); *Johnson*, 68 S.W.3d at 652–53.

When reviewing a trial court's ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court's application of the law of search and seizure to the facts of the case. *Estrada,* 154 S.W.3d at 607. When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court's ruling, *id.,* and we assume that the trial court made implicit findings of fact supported by the record. *Ford v. State,* 158 S.W.3d 488, 493 (Tex.Crim.App.2005); *Carmouche,* 10 S.W.3d at 327–28. However, we review de novo the determination of whether a specific search or seizure was "reasonable" as an ultimate question of Fourth Amendment law. *Kothe v. State,* 152 S.W.3d 54, 62 (Tex.Crim.App.2004); *Carmouche,* 10 S.W.3d at 327–28.

### Does Appellant Have Standing To Challenge The Stop Of The Vehicle?

Appellant contends that the trial court abused its discretion in holding that Appellant lacked standing to assert a violation of his right to be free from an unreasonable search and seizure. The State responds that no such ruling was made by the trial court, which, as mentioned above, only implicitly denied Appellant's motion to suppress without stating any reasons or filing any findings or conclusions. The State argues alternatively that Appellant lacked standing to challenge the search of the vehicle, but that even if Appellant had standing the trial court's ruling was correct because the State proved that the officer who stopped the vehicle had probable cause to do so.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex.Crim.App.2003), *cert. denied,* 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004); *Ross,* 32 S.W.3d at 856; *Romero,* 800 S.W.2d at 543.[5]

Generally, the right to challenge the lawfulness of a search is limited to persons with "standing," that is, to those who have been aggrieved by a search and seizure. *Goehring v. State,* 627 S.W.2d 159, 164 (Tex.Crim.App. [Panel Op.] 1982). When a search is contested, the accused establishes standing, or his right to complain of the search, by showing that he had a reasonable expectation of privacy in the area searched. *Chapa v. State,* 729 S.W.2d 723, 725 n. 1 (Tex.Crim.App.1987). The court of criminal appeals recently explained these guidelines in *Kothe,*[6]

Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *FN1* He must prove that he was a "victim" of the unlawful search or seizure. *FN2* He has no standing to complain about the invasion of someone else's personal rights. *FN3* Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *FN4* Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo. FN5.*

---

5. This is true even if the trial court gave the wrong reason for its ruling. *Armendariz,* 123 S.W.3d at 404.

6. We have renumbered and italicized the footnotes appearing in the excerpt so as to distinguish the footnotes in *Kothe* from the footnotes appearing in this opinion.

*FN1 See Rakas v. Illinois,* 439 U.S. 128, 139, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (noting that issue of standing involves two inquiries: first, whether defendant has alleged an "injury in fact"; and second, "whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties"). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

*FN2 See generally* 5 WAYNE R. LA-FAVE, SEARCH AND SEIZURE § 11.3, at 118 (3d ed.1996).

*FN3 United States v. Salvucci,* 448 U.S. 83, 84–85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Villarreal v. State,* 708 S.W.2d 845, 849–50 (Tex.Crim.App. 1986).

*FN4 See Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *United States v. Pierce,* 959 F.2d 1297, 1303 (5th Cir.1992); *United States v. Brazel,* 102 F.3d 1120, 1147 (11th Cir. 1997). Because warrantless searches and seizures are presumed to be unreasonable, the prosecution must establish that any search or seizure was justified under an exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

*FN5 State v. Johnson,* 896 S.W.2d 277, 285 (Tex.App.-Houston [1st Dist.] 1995), *aff'd,* 939 S.W.2d 586 (Tex.Crim. App.1996); *see United States v. Phillips,* —— F.3d ——, ——, 2004 U.S.App. LEXIS 17274 *9 (5th Cir.2004) (noting that "[w]hether a defendant has standing to contest an allegedly illegal search is a question of law" and is reviewed *de novo* ); *United States v. DeLuca,* 269

F.3d 1128, 1131 (10th Cir.2001) (stating that courts review *de novo* the issue of whether a defendant has standing to challenge a search).
152 S.W.3d at 59.

The court of criminal appeals in *Kothe* cited with approval the following statement from a well-known legal treatise:

If either the stopping of the car or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.

*Id.* at 61, *citing* 5 LAFAVE, § 11.3(e), at 173–74.

The court of criminal appeals held that the testimony in *Kothe* established that both the driver and passenger of the vehicle had a reasonable expectation of privacy in the right to be free from an illegal detention, reasoning that "[t]he intrusion a vehicle stop causes is personal to those in the car when it occurs." *Id.* In support of its statement, the court cited numerous authorities involving a passenger's standing to contest the stop of a vehicle:

*United States v. Powell,* 929 F.2d 1190, 1195 (7th Cir.1991) (collecting cases and concluding that passengers, as well as drivers, have standing to challenge a vehicle stop or prolonged detention); *see also United States v. Woodrum,* 202 F.3d 1, 6 (1st Cir.2000) (citing *Rakas* and holding that "each occupant of a car has a right to challenge the propriety of a traffic stop under the Fourth Amendment"); *United States v. Roberson,* 6 F.3d 1088, 1091 & n. 6 (5th Cir.1993) ("[w]hereas the search of an automobile does not implicate a passenger's fourth amendment rights, a stop results in the seizure of the passenger and driver alike. Thus, a passenger of a

stopped automobile does have standing to challenge the seizure as unconstitutional"); *United States v. Erwin*, 875 F.2d 268, 269, n. 2 (10th Cir.1989) (citing *Wong Sun[ v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] and holding that "even if defendant lacks standing to challenge the search of the car, if the initial stop was illegal, the seized contraband is subject to exclusion under the 'fruit of the poisonous tree' doctrine"); *State v. Harms*, 233 Neb. 882, 884–87, 449 N.W.2d 1, 4 (1989) (collecting cases and concluding that an occupant of a vehicle will ordinarily have a legitimate expectation to be free of unreasonable governmental intrusion which gives the occupant standing to challenge the stop as violative of his Fourth Amendment rights); *State v. De-Masi*, 419 A.2d 285 (R.I.1980), *vacated on other grounds*, 452 U.S. 934, 101 S.Ct. 3072, 69 L.Ed.2d 948 (1981) (holding that all occupants of the vehicle had standing to challenge the constitutionality of the stop because "all three shared a legitimate expectation that they would be free from unreasonable governmental intrusion occasioned by the stop, the request for identification, and the warrant check. To hold otherwise here would be to draw artificial, formalistic distinctions not grounded in logic").

*Id.* at 61 n. 19.

■ Applying these principles, this court has recognized that generally a stop of a vehicle results in a seizure of the passenger and driver alike, and a person has standing to challenge the stop of a vehicle in which he was a passenger. *Tucker v. State*, 183 S.W.3d 501, 507 (Tex. App.-Fort Worth 2005, no pet.). Similarly, we hold in the case at bar that Appellant had standing to challenge the initial stop of the vehicle in which he was a passenger.

*See Kothe*, 152 S.W.3d at 61 & n. 19; *Tucker*, 183 S.W.3d at 507.

***Reasonable Suspicion To Stop The Vehicle***

■ The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford*, 158 S.W.3d at 492. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.*

Whether a search is reasonable is a question of law that we review de novo. *Kothe*, 152 S.W.3d at 62. Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex.Crim.App.), *cert. denied*, 540 U.S. 1004, 124 S.Ct. 536, 157 L.Ed.2d 410 (2003); *see Best*, 118 S.W.3d at 862.

■ A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Carmouche*, 10 S.W.3d at 328. An officer conducts a lawful temporary detention when he has reasonable suspicion to

believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* at 492–93. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* at 492.

■ It was undisputed at the suppression hearing that this case involved a warrantless stop and arrest. Accordingly, the burden of proof shifted to the State and whether Appellant attempted to refute the existence of sufficient suspicion is irrelevant to the reasonable-suspicion analysis. *See Ford*, 158 S.W.3d at 492. Appellant was not charged with the responsibility of challenging whether the police officers had specific facts warranting the detention; the State bore the burden of establishing the reasonableness of the warrantless detention. *See id.*

■ When a traffic violation is committed in an officer's presence, the officer has probable cause to lawfully stop and arrest or detain the violator. TEX.CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005); TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999); *Tyler v. State*, 161 S.W.3d 745, 748 (Tex.App.-Fort Worth 2005, no pet.); *see Williams v. State*, 726 S.W.2d 99, 100–01 (Tex.Crim.App.1986).

■ As stated previously, only one witness testified at the suppression hearing. The officer who stopped the vehicle did not testify, nor did anyone who observed the traffic stop. The entire extent of the evidence regarding the stop of the vehicle came from Officer Bailey, who was at the homeowner's residence when he was notified by either Sergeant Loeffert or "the chief" that the vehicle had been located; he arrived at the location where Appellant was being held after the initial stop of the vehicle had already occurred. Officer Bailey stated that to his knowledge, there was not an outstanding arrest warrant for Appellant or for the driver of the vehicle. When asked what the reason was for the stop of the vehicle, the officer responded, "I was told the reason for the traffic stop was failure to signal a lane change." He was not asked and did not testify regarding who told him the reason for the traffic stop of the vehicle or who in fact actually stopped the vehicle.[7] When asked whether any failure to signal a lane change is a violation of the law, the officer responded, "[w]ithin a hundred feet before turning." He unequivocally acknowledged that he was not present when the vehicle in question was stopped and was not there to determine what the facts and circumstances were when the vehicle was stopped or to see the driver's signaling, or lack thereof. He conceded that it might be possible that not every failure to signal a lane change would result in probable cause to arrest someone. He did not indicate that he had been told any of the details of the alleged traffic violation.

Although not mentioned during the suppression hearing or in the parties' briefs on appeal, presumably the offense that Officer Bailey was referring to is the requirement of section 545.104(a) of the transportation code that provides, "An operator shall use the signal authorized by Section 545.106 to indicate an intention to

---

**7.** Officer Bailey did testify that he was advised by *Sergeant Loeffert* that at the time of the traffic stop Appellant was in the back seat, crouched down with a jacket over his head. Sergeant Loeffert did not testify at the suppression hearing.

turn, change lanes, or start from a parked position." TEX. TRANSP. CODE ANN. § 545.104(a) (Vernon 1999). The statute further provides that "[a]n operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." *Id.* § 545.104(b). Officer Bailey's equivocal testimony quoted above must be construed as indicating that he was told that the offense for which the vehicle was stopped was either a failure to signal when changing lanes, or a failure to signal within one hundred feet of turning.

Section 545.106 provides two methods by which an operator of a vehicle may comply with section 545.104: "(1) using the hand and arm; or (2) lighting signal lamps approved by the department." *Id.* § 545.106(a) (Vernon 1999).[8] This section further specifies that if the vehicle meets certain dimensional specifications, the required signal must be given by lighting the signal lamps. *Id.* § 545.106(b). Section 545.107 states that "an operator who is permitted to give a hand and arm signal" shall do so in the manner specified in that statute. *Id.* § 545.107 (describing the appropriate hand and arm signals).

The suppression hearing in the instant case did not include any discussion, argument, or testimony regarding what type of "vehicle" Appellant was a passenger in when stopped by the police. The questions and responses from Officer Bailey consistently use the term "vehicle"; without more, there was no way for the trial court or this court to determine whether the driver was permitted by sections 545.104, 545.106, and 545.107 to use hand signals to indicate a change of lane or to indicate that the vehicle was turning in one hundred feet.

*Ford v. State* provides guidance in our determination of whether the State met its burden in the instant case of establishing that the officer who stopped the vehicle had reasonable suspicion to believe that an individual was violating the law. 158 S.W.3d 488. In that case, the arresting officer, Peavy, testified that he saw Ford following another car at a distance that Peavy believed was insufficient and, thus, in violation of a Texas highway statute. *Id.* at 493. Specifically, Peavy stated that Ford was "following too close." *Id.* The court of criminal appeals held that the record revealed an absence of any facts allowing an appellate court to determine the circumstances upon which Peavy could reasonably conclude that Ford actually was, or had been, or soon would have been engaged in criminal activity. *Id.* Instead, the trial court was presented only with a conclusory statement that Ford was violating a traffic law. *Id.* The court of criminal appeals held that without specific, articulable facts, a court has no means of assessing whether the officer's opinion was objectively reasonable, and mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis. *Id.* When a stop is not based on objective criteria, "the risk of arbitrary and abusive police practices exceeds tolerable limits." *Id.*

In reversing the trial court's denial of Ford's motion to suppress, the court concluded,

The evidence before the trial court indicated only that in Peavy's judgment,

---

8. The transportation code provides which vehicles are required to be equipped with "electric turn signal lamps" and the specifications for these signal lamps. *Id.* § 547.324. Because the testimony at the suppression hearing does not indicate the type of vehicle Appellant was riding in, it is impossible to determine whether that vehicle was required to be equipped with electric turn signal lamps. *See id.* (providing which vehicles are exempt from the requirement of being equipped with electric turn signal lamps).

Ford was following another car too closely in violation of Transportation Code § 545.062(a). The State failed to elicit any testimony pertinent to what facts would allow Peavy to objectively determine Ford was violating a traffic law in support of his judgment. Even viewing the evidence in the light most favorable to the trial court's ruling, the record does not support a finding of reasonable suspicion. Because the record fails to reveal any objective facts, we hold that the trial court erred in denying Ford's motion to suppress.

*Id.* at 494.

The dissent in the instant case states that *Ford* is not applicable to the facts of Appellant's case because *Ford* only requires the inclusion of specific and articulable facts when the reason for the stop is based on the subjective opinion of the officer. Dissent at 3. *Ford* is applicable precisely because Officer Bailey's testimony did not present an objective description of the facts underlying the reasonableness of the stop of the vehicle. The officer's testimony was purely subjective and the trial court could not determine based upon the testimony which traffic offense, if any, the driver of the vehicle committed. Was it failure to signal a lane change, or was it failure to indicate an intention to turn a vehicle one hundred feet before the turn? The officer's cursory testimony reflects that it could be either of these offenses.

Did the driver of the vehicle fail to signal a lane change or turn because the vehicle was required to be equipped with signal lamps which the driver did not use? Or, was the vehicle such that it was permissible for the driver to signal by using hand signals, which may or may not have been used?

The dissent states that where testimony is based on an objective observation of a police officer, the risk of allowing a police officer's individual perception to justify a stop is not present. Dissent at 3. However, the cases cited in support of this statement do not discuss this specific proposition.[9]

Having reviewed the evidence in the instant case in the light most favorable to the trial court's implied finding that the officer who initiated the traffic stop of the vehicle had reasonable suspicion to stop the vehicle, we conclude that the State did not meet its burden of establishing that the stop was reasonable. Although an officer who subsequently arrived on the scene testified that he had been told by an unnamed source that the reason for the traffic stop was the driver's failure to signal a lane change, or possibly failure to signal within a hundred feet before turning, the record is void of any testimony whatsoever adduced from anyone, with or without personal knowledge, of the objective facts or

---

9. *See McVickers v. State,* 874 S.W.2d 662, 663–66 (Tex.Crim.App.1993) (holding evidentiary rules regarding hearsay apply at a motion to suppress hearing; case was reversed because of improper objected-to hearsay testimony that other officers told witness that defendant's vehicle had been stopped because he had run a red light); *Tores v. State,* 518 S.W.2d 378, 379–81 (Tex.Crim.App.1975) (restating general rule that an officer has probable cause to lawfully stop a vehicle and arrest a passenger when that officer observes a traffic violation, failure to stop at stop sign);

*Walter v. State,* 997 S.W.2d 853, 858 (Tex. App.-Austin 1999) (holding arresting officer's stop of defendant's truck was valid because the officer witnessed the defendant commit a traffic offense, failure to properly signal before a turn, which the court stated was "an objective basis for stopping the truck," but not mentioning the concept that when an officer makes an objective observation the risk of allowing the officer's individual perception to justify a stop is not present), *rev'd on other grounds,* 28 S.W.3d 538 (Tex.Crim. App.2000).

details regarding the stop of the vehicle.[10] Based upon the record before us, and reviewing the totality of the circumstances, we are unable to conclude that an unknown officer who initially stopped the vehicle had specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the driver of the vehicle had been engaged in a traffic violation. *See Ford,* 158 S.W.3d at 493–95.[11] Accordingly, we hold that the trial court abused its discretion in denying Appellant's motion to suppress the evidence found in the vehicle.

### Harm Analysis

■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is rule 44.2(a)'s constitutional standard. *Hernandez v. State,* 60 S.W.3d 106, 108 (Tex.Crim.App.2001). Accordingly, we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. Tex.R.App. P. 44.2(a). The question is whether the trial court's

denial of Appellant's motion to suppress and admitting the evidence was harmless beyond a reasonable doubt. *See Williams v. State,* 958 S.W.2d 186, 194 (Tex.Crim. App.1997). In applying the "harmless error" test, we ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we are unable to determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *See Williams,* 958 S.W.2d at 195. The erroneous admission of the contraband formed the basis for Appellant's conviction; thus, Appellant was harmed by its admission. Accordingly, we sustain Appellant's sole issue.

### CONCLUSION

We reverse the judgment of the trial court and remand the cause for further proceedings.

McCOY, J. filed a dissenting opinion.

---

10. The dissent asserts that the testimony in the instant case supports the position that the stop was reasonable. However, in all the cases cited, the arresting officer was the witness who testified that he had actually seen the traffic violation. *See Texas Dep't of Pub. Safety v. Shellberg,* 2005 WL 1981488, at *3 (Tex.App.-Corpus Christi Aug.18, 2005, no pet.) (mem.op.); *Hargrove v. State,* 40 S.W.3d 556, 557 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *Texas Dep't of Pub. Safety v. Walter,* 979 S.W.2d 22, 29 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Additionally, we note that *Hargrove* and *Walter* were issued before the court of criminal appeals' *Ford* opinion. In *Shellberg,* the defendant did not challenge on appeal the arresting officer's testimony that the traffic stop was proper be-

cause of the defendant's failure to signal; perhaps that is the reason why *Shellberg* makes no mention of the court of criminal appeals' holding in *Ford.*

11. *See also Torres v. State,* 182 S.W.3d 899, 902–03 (Tex.Crim.App.2005) (reaffirming *Ford's* statement that "[m]ere opinions [of police officers] are ineffective substitutes for specific, articulable facts" and holding that the facts and circumstances known personally to the police officer who was called to scene of traffic accident by other officers, or which had been conveyed to him by reasonably trustworthy sources, did not establish probable cause to arrest appellant for driving while intoxicated).

BOB McCOY, Justice, dissenting.

I concur with the majority's holding that Appellant had standing to challenge the initial stop of the vehicle in which he was a passenger. I disagree, however, with the holding that the State did not meet its burden of establishing that the stop was reasonable.

The majority relies on *Ford v. State*, 158 S.W.3d 488 (Tex.Crim.App.2005), in concluding that the State did not meet its burden of proving that the stop was reasonable. In *Ford*, the police officer testified that he stopped Ford because Ford was "following too close" to another car. *Id.* at 493. The court found a complete absence of objective factual support in the record. *Id.* It determined that without "specific, articulable facts," the statement was merely the opinion of the officer, and the court had no means of assessing whether the stop was reasonable. *Id.* at 493–94.

The purpose of providing "specific and articulable" facts is to create a standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* at 492. Therefore, if the stop was based on the subjective judgment of the police officer, objective facts must be provided to support the decision. This standard exists to prevent the risk of arbitrary or abusive police practices that could result if a police officer's subjective opinion were allowed to suffice instead of specific facts. *Id.*

In *Ford*, the testimony that the cars were "following too close" was subject to varying interpretations depending on the person who observed the conduct. One officer's opinion of what constitutes "following too close" could differ from another's. Immediate questions arise from the testimony: How close were the cars? What was the speed of the vehicle and other traffic? What were the road conditions? Without additional objective facts to support this testimony, the stop is justified only by the officer's individual perception. It is apparent that additional facts were necessary in the *Ford* case because the officer's statement was in fact an opinion.

An examination of the *Ford* rule shows that "specific and articulable facts" are necessary to justify a stop only when the stop would otherwise be based only on the subjective opinion of the officer. *Ford* is not applicable to this case because the stop was based on the failure to signal a lane change, an offense that could be objectively determined. Where testimony is based on an objective observation, such as the running of a red light, the risk of allowing a police officer's individual perception to justify a stop is not present. *See McVickers v. State*, 874 S.W.2d 662, 663–64 (Tex. Crim.App.1993) (running a red light is a sufficient basis for stop); *Tores v. State*, 518 S.W.2d 378, 379 (Tex.Crim.App.1975) (running a stop sign is a sufficient basis for stop); *Walter v. State*, 997 S.W.2d 853, 858 (Tex.App.-Austin 1999), *rev'd on other grounds*, 28 S.W.3d 538 (Tex.Crim.App. 2000) (failing to signal before making a turn is an objective basis for stop).

Here, the driver's "failure to signal a lane change" was, in and of itself, an objective reason for the stop. Such an offense was not subject to various interpretations: either the driver used her signal to change lanes or she did not. Unlike *Ford*, where additional facts were absolutely necessary to determine whether there was an objective basis to stop the car, such facts were not necessary in this case. Furthermore, while objective questions arose to challenge a subjective observation in the *Ford* testimony, the only question that arose from the testimony in the case before us was whether or not the offense occurred.

Because the stop was based on the observation of an objective offense rather than the officer's subjective judgment that an offense may have occurred, no additional facts must be provided to show that there was an objective basis to stop the vehicle.

Despite the fact that an officer may rely upon information relayed to him by other officers, the majority focuses heavily on the fact that the testifying officer was told the reason for the stop, rather than was present when the stop was made. *See State v. Jennings,* 958 S.W.2d 930, 933 (Tex.App.-Amarillo 1997, no pet.) (citing *Fearance v. State,* 771 S.W.2d 486, 509 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989)). While Officer Bailey testified that he was not present when the stop was made, he did testify that when he arrived at the scene of the traffic violation he was "told the reason for the traffic stop was failure to signal a lane change."[1] It is important to note that hearsay is admissible in a suppression hearing. *See Granados v. State,* 85 S.W.3d 217, 227 (Tex.Crim. App.2002), *cert. denied,* 538 U.S. 927, 123 S.Ct. 1578, 155 L.Ed.2d 321 (2003). An officer may rely upon information given to him by other officers, such as the information told to Officer Bailey concerning the reason for the stop. *See Jennings,* 958 S.W.2d at 933.

Although the majority asserts that the officer's testimony did not provide an objective description of the facts to show the reasonableness of the stop, case law supports the position that the stop was reasonable. In *Walter,* the court held that the state trooper's statement that he observed the driver commit the traffic offense of changing lanes without signaling was substantial evidence that he had reasonable suspicion to stop the car. *See Tex. Dep't of Pub. Safety v. Walter,* 979 S.W.2d 22, 29 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In *Shellberg,* the court held that the officer properly stopped the car for the failure to signal. *Tex. Dep't Of Pub. Safety v. Shellberg,* 2005 WL 1981488, at *2 (Tex.App.-Corpus Christi Aug.18, 2005, no pet.) (mem.op.). In *Hargrove,* a detective testified that the officers made the traffic stop based on the driver's failure to signal a lane change. The court held that there was reasonable suspicion for the stop. *Hargrove v. State,* 40 S.W.3d 556, 559 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

Because I believe that there was reasonable suspicion to stop the vehicle, I would hold that the trial court properly denied Appellant's motion to suppress and affirm the trial court's judgment. I respectfully dissent.

---

1. Officer Bailey further testified that he was advised by Sergeant Loeffert that at the time the stop was made, Appellant was in the back seat, crouched down with a jacket over his head. The majority does not question the fact that Bailey was also told this fact rather than observing it himself.