PD-0467-15

PD-0467-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/24/2015 10:24:51 AM
Accepted 4/24/2015 3:52:17 PM
ABEL ACOSTA
CLERK

NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

**CHARLES JEROME MCCLENTY**
Petitioner

v.

**THE STATE OF TEXAS**
Respondent

---

Petition is in Cause No.1312934 from County
Criminal Court No. Three of Tarrant County, Texas,
and Cause No. 02-14-00184-CR in the
Court of Appeals for the Second District of Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

---

FILED IN
COURT OF CRIMINAL APPEALS

April 24, 2015

ABEL ACOSTA, CLERK

Kimberley Campbell
TBN: 03712020
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorneys for Petitioner
Charles Jerome McClenty

# IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to the trial court's final judgment, and the names and addresses of all trial and appellate counsel.

| | |
|---|---|
| Trial Court Judge: | Hon. Billly Mills, judge, County Criminal Court No. 3, Tarrant County |
| Petitioner: | Charles Jerome McClenty |
| Petitioner's Trial Counsel: | Hon. Kimberley Campbell<br>TBN: 03712020<br>Factor, Campbell & Collins<br>Attorneys at Law<br>5719 Airport Freeway<br>Fort Worth, Texas 76117 |
| Petitioner's Counsel on Appeal: | Hon. Abe Factor<br>TBN: 06768500<br>Factor, Campbell & Collins<br>Attorneys at Law<br>5719 Airport Freeway<br>Fort Worth, Texas 76117 |
| Appellee: | The State of Texas |
| Appellee's Trial Counsel: | Hon. Andrea Hunter<br>TBN: 24089148<br>Hon. Jonathan Miller<br>TBN: 24073569<br>District Attorney's Office<br>401 W. Belknap<br>Fort Worth, Texas 76196 |
| Appellee's Counsel on Appeal: | Hon. Charles Mallin<br>TBN: 12867400<br>Hon. Andy Porter<br>TBN: 24007857<br>District Attorney's Office<br> 401 W. Belknap Street<br>Fort Worth, Texas 76196 |

# TABLE OF CONTENTS

*page*

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . .1

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

REASONS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     The Court of Appeals erred when it affirmed the trial court's denial of McClenty's motion to suppress. . . . . . . . . . . . . . . . . .2

     A.    *Facts*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

     B.    *Opinion Below*. . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

     C.    *Controlling Law*. . . . . . . . . . . . . . . . . . . . . . . . . . .7

     D.    *Discussion*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

     E.    *Harm Analysis*. . . . . . . . . . . . . . . . . . . . . . . . . . .16

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . .18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . .18

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

# INDEX OF AUTHORITIES

*Cases*                                                                  *page*

*Amador v. State,*
      221 S.W.3d 666 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . .7, 8

*Brown v. Texas,*
      443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). . . . . . . . . 14, 16

*State v. Castleberry,*
      332 S.W.3d 460 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . .9

*Castro v. State,*
      202 S.W.3d 348 (Tex. App.–Fort Worth 2006, pet. ref'd). . . . . .16

*United States v. Cortez,*
      449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). . . . . . . . . . . 15

*Crain v. State,*
      315 S.W.3d 43 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . .11

*Davis v. State,*
      947 S.W.2d 240 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . .11

*Derichsweiler v. State,*
      348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . .8, 9, 10

*Estrada v. State,*
      154 S.W.3d 604 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . .8

*Ford v. State,*
      158 S.W.3d 488 (Tex. Crim. App. 2005). . . . . . . . . . . . . .14, 15, 16

*Garcia v. State,*
      43 S.W.3d 527 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . . .14

*Guzman v. State,*
      955 S.W.2d 85 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . . 7-8

*Head v. State*,
131 Tex. Crim. 96, 96 S.W.2d 981 (1936). . . . . . . . . . . . . . . . . .12

*Hernandez v. State*,
60 S.W.3d 106 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . . .16

*Holmes v. State*,
323 S.W.3d 163 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . .17

*Illinois v. Wardlow*,
528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). . . . . . . . . . 13

*Johnson v. State*,
68 S.W.3d 644 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . .8

*State v. Kerwick*,
393 S.W.3d 270 (Tex. Crim. App. 2013). . . . . . . . . . . .8, 10, 12, 13

*Martinez v. State*,
348 S.W.3d 919 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . .11, 13

*McClenty v. State*,
02-14-00186-CR,2015 WL 1407759 (Tex. App.–
Fort Worth, March 26, 2015, no. pet. h.)
(mem. op., not designated for publication). 2, 3, 6, 7

*State v. Mendoza*,
365 S.W.3d 666 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . .8

*Mosley v. State,*
983 S.W.2d 249 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . .17

*Ornelas v. United States*,
517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). . . . . 8

*Reed v. Buck*,
370 S.W.2d 867 (Tex. 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Scott v. State*,
227 S.W.3d 670 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . .17

*Snowden v. State*,
353 S.W.3d 817 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . .16

*Terry v. Ohio*,
392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). . . 8, 9, 11, 14, 15

*Woods v. State*,
152 Tex. Crim. 338, 213 S.W.2d 685 (1948). . . . . . . . . . . . . . . . 12

## Constitutions

U.S. CONST. AMEND. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

## Statutes

TEX. PENAL CODE ANN. § 49.04(d) (West Supp. 2014). . . . . . . . . . . . . .1

## Court Rules

TEX. R. APP. P. 44.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 17

## STATEMENT REGARDING ORAL ARGUMENT

Because Petitioner does not believe that oral argument will materially assist the Court in its evaluation of matters raised by this pleading, Petitioner respectfully waives oral argument.

## STATEMENT OF THE CASE

On January 30, 2013, Charles Jerome McClenty ("Mr. McClenty" or "Appellant") was charged by information and complaint with driving while intoxicated. (C.R. 5, 6); *See* Tex. Penal Code Ann. § 49.04(d) (West Supp. 2014). On January 31, 2014, a hearing on Mr. McClenty's motion to suppress was held in County Criminal Court No. Three of Tarrant County, the Honorable Billy Mills, presiding. (R.R. *passim*). At the conclusion of the hearing, the trial court overruled Mr. McClenty's motion. (C.R. 17; R.R. 31). On March 12, 2014, Mr. McClenty pled guilty to the charged offense. (C.R. 18, 19). A timely Motion for New Trial was filed on March 18, 2014, which was overruled by operation of law. (C.R. 20). A Timely Notice of Appeal was filed on March 18, 2014. (C.R. 20). This appeal ensued.

## STATEMENT OF PROCEDURAL HISTORY

The opinion of the Second Court of Appeals Affirming Mr. McClenty's judgment was handed down on March 26, 2015. *See*

1

*McClenty v. State*, 02-14-00186-CR,2015 WL 1407759 (Tex. App.–Fort Worth, March 26, 2015, no. pet. h.) (mem. op., not designated for publication). This timely Petition for Discretionary review ensued.

## GROUNDS FOR REVIEW

## GROUND FOR REVIEW ONE

**I.      The Court of Appeals erred when it affirmed the trial court's denial of McClenty's motion to suppress.**

## REASONS FOR REVIEW

1.      The decision by the Second Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals.

2.      The Second Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

## ARGUMENT

## GROUND FOR REVIEW ONE (Restated)

**I.      The Court of Appeals erred when it affirmed the trial court's denial of McClenty's motion to suppress.**

At trial , Mr. McClenty filed a motion to suppress on the grounds that the traffic stop which led to his arrest for suspicion of driving

2

while intoxicated was made without reasonable suspicion. *See McClenty*, 2015 WL 1407759 at *1. Because this petition is predicated upon error by the Second Court of Appeals in its review of Mr. McClenty's complaint on appeal, a review of the evidence presented and events which transpired below is in order.

### A. *Facts*

On January 26, 2013, Mark Allen, a manager at Roxie's Bar and Grill in North Richland Hills, Texas, called 9-1-1 to report a disturbance in the parking lot. (R.R. 7-8, 10, 16). Officer Matthew Visser ("Officer Visser") was dispatched to the scene. (R.R. 16). During the examination of Officer Vesser at the suppression hearing, the following transpired:

Q.  When you pulled up to Roxie's what did you see?

A.  When I pulled up to Roxie's the call indicated
    there was possibly six more persons possibly
    getting ready to fight or fight in the parking
    lot. When I pulled in the parking lot I noticed
    the manager, Mr. Allen, pointing out a vehicle
    that had left.

Q.  Now, you said you noticed the manager, Mr.
    Allen. Had you had prior dealings with him
    before this particular date?

A.  Yes, I have.

Q.  And what had been the context of the other
    times that you had come in contact with him?

A.  Most of the times it's been disturbances

3

involving intoxicated persons, persons that have been arrested for public intoxication.

Q. So at that point when you saw Mr. Allen, did you believe that he was the individual that had called the police or someone at his establishment?

A. Yeah, I believe so. I believe he was the contact person on our call sheet of who had called.

Q. So you said when you saw him what did you see him do?

A. He was indicating with his hand pointing at a vehicle going -- like indicating that the vehicle went that way.

Q. Okay. And did you see the vehicle that you believed him to be pointing to?

A. Yes, I did.

Q. What did you do at that point?

A. I saw the vehicle pulling into the pump area of a gas station. Once I located the vehicle, I initiated my lights.[1]

\* \* \*

Q. Had you had occasions in the past--you mentioned earlier in your testimony you had responded to Roxie's and people were arrested for public intoxication. Had you had occasion in the past to respond to Roxie's for fights or other altercations?

A. Yes.

_____

[1]

 Appellant was identified as the driver of the vehicle stopped by Officer Visser. (R.R. 20).

4

MS. CAMPBELL (Defense Attorney): Objection relevance.

THE COURT: Overruled.

Q. And so at the time that you initiated the traffic stop of the defendant, what were you stopping him for?

A. To investigate whether breach of the peace or an assaultive offense had taken place.

      \* \* \*

Q. (Defense Attorney): And at that time you stated that your probable cause for this arrest, under probable cause for arrest, was that you were informed by dispatch that one of the witnesses involved had just left the scene and that one of the subjects appeared as if they were going to fight. And you did not receive information that there was a fight, had you?

A. Not at that point, no.

Q. And when the general manager of Roxie's pointed to the car, he didn't tell you there had been a fight, did he?

A. No.

Q. So you didn't have any information that there had been a fight? You didn't have any information that anyone was intoxicated even, did you?

A. The only information I had, based off of what I had, was possibly a breach of peace.

MS. CAMPBELL:     Pass the witness.

MS. HUNTER:   One moment, Your Honor.

      (Pause)

5

BY MS. HUNTER

Q.  Just to clarify, Officer Visser, you were dispatched to a disturbance?

A.  That is correct.

Q.  Okay. And at that point you didn't know for sure if the disturbance was verbal or physical?

A.  It had indicated the people were ready to fight. As I'm getting closer to the scene itself, dynamics, we don't know whether a fight had occurred, that information is relayed to our dispatch, if there's more information that's relayed to them. So I had no idea whether they were still on the line with the complainant, person who had called, or whether or not an assault had occurred.

Q.  But at that point when you arrived, what you knew was that the bar manager was pointing to someone that you believed to be involved in this either verbal or physical altercation?

A.  Correct.

(R.R. 17-18, 21-22, 23-25).

The trial court subsequently denied the motion to suppress. (C.R. 17; R.R. 31).

## B.    *Opinion Below*

The court of appeals correctly identified the standard of review to be utilized by a reviewing court when assessing a trial court's denial of a motion to suppress. *See McClenty*, 2015 WL 1407759 at *1 ("We

review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.") (citations omitted). The court further correctly set forth the legal test used in assessing a finding of reasonable suspicion. *Id.* at *2 ("Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.") (citations omitted).

However, the court of appeals then misapplied those correctly-stated fundamentals in affirming the trial court's ruling.[2] *Id.* at *3.

### C. *Controlling Law*

#### 1. <u>Standard of Review</u>

An appellate court must review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955

---

[2] Curiously, the court of appeals "supplemented" the evidence presented at the suppression hearing when it "enriched" the detaining officer's testimony by adducing that the officer "might have meant" disorderly conduct when he mentioned breach of the peace on the witness stand. *See McClenty*, 2015 WL 1407759 at *2 n.3.

S.W.2d 85, 89 (Tex. Crim. App. 1997). The reviewing court will give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). In unlawful- detention cases, whether the facts known to the officer at the time of the detention constituted a reasonable suspicion is reviewed *do novo*. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012).

### 2. General Fourth Amendment Principles

"The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013), *citing Terry v. Ohio*, 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *and Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Detentions and arrests are Fourth Amendment seizures and therefore

8

implicate Fourth Amendment protections. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). "[W]hen a seizure takes the form of a detention, Fourth Amendment scrutiny is necessary-it must be determined whether the detaining officer had reasonable suspicion that the citizen is, has been, or is about to be engaged in criminal activity." *Id*. (citations omitted).

Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *See Derichsweiler*, 348 S.W.3d at 914. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880. This standard looks to the totality of the circumstances; if the circumstances combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Derichsweiler*, 348 S.W.3d at 914. An appellate court will consider the cumulative information known to the cooperating officers, including a 911 dispatcher. *Id*. at 914–15. When, as here, a known citizen-informant provides information, the only question is whether

9

that information, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id*. at 915.

### D.    *Discussion*

The manager of the bar, Mark Allen, testified at the hearing that on the night in question, he observed an argument, that no physical violence ever occurred, he never heard Mr. McClenty make any physical threats against anyone, and that when he was asked to leave the club, Mr, McClenty complied. (R.R. 11-13). Additionally, Officer Visser admitted at the hearing that he had not had any reports of a fight occurring, either from his dispatcher or from Mr. Allen. (R.R. 23-25).

In *Kerwick*,[3] 393 S.W.3d at 275, a 9-1-1 caller had notified the police that "several people were fighting in front of [the] bar"; and the responding officer spoke with the owner of a car damaged in the altercation, who pointed out the vehicle the person responsible was a passenger. *Id*. Noticeably different from the case here, in *Kerwick*, there

---

[3]  In her closing argument, the prosecutor stated that *Kerwick* was controlling in this instance. (R.R. 30). As will be shown below, however, the facts here distinguish the instant case from *Kerwick*.

was a crime reported by the 9-1-1 caller–assault–and the responding officer personally observed the result of another crime–criminal mischief. The State's own witnesses here could not articulate anything occurring on the night in question except for an argument; more importantly, nothing more was reported in the 9-1-1 call to have occurred, either. (R.R. 11-13, 23-25).

To justify an investigative detention, the officer must have specific articulable facts, which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts would warrant the intrusion on the detainee. *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997) (quoting *Terry v*, 392 U.S. at 21, 88 S.Ct. at 1880. These facts must amount to more than a mere hunch or suspicion. *See Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

An argument is most assuredly not a crime. Nor under the fact reported and known to Officer Visser, is an argument related to a

11

crime. The absolute paucity of the information known to Officer Visser is aptly shown where he candidly admits that "[t]he only information I had, based off of what I had, was possibly a breach of peace." (R.R. 25). However, an objective belief in "possibly a breach of the peace" is not supported here under the facts. Critically–and as ignored by the court of appeals–"[a]ctual or threatened violence is an essential element of a breach of the peace." *Woods v. State*, 152 Tex. Crim. 338, 213 S.W.2d 685, 687 (1948) (quoting *Head v. State*, 131 Tex. Crim. 96, 99, 96 S.W.2d 981, 982 (1936)).[4] As stated previously, no violence occurred, was threatened, or reported. (R.R. 11-13, 23-25). The absence of violence or threats of violence distinguishes the instant case from the facts set forth in *Kerwick*, where actual physical violence was reported by the 9-1-1 caller. *See Kerwick*, 393 S.W.3d at 275. Further, though public intoxication might under some circumstances be considered a breach of the peace, Officer Visser had no reports that anyone involved in the argument was intoxicated. (R.R. 24).

Further separating the instant case from *Kerwick* are the events

---

[4]

*See Reed v. Buck*, 370 S.W.2d 867, 870–71 (Tex. 1963) (explaining simply because certain cases had "not been cited in recent years," such "ancient cases" do not "just fade[ ] away"; instead, "unless there is some good reason for overruling them, they should not be disregarded").

12

surrounding Officer Visser's initial detention of Mr. McClenty and McClenty's peaceful departure from the scene. In *Kerwick*, the driver of the suspect vehicle had attempted to drive away after the responding officer approached her vehicle, a circumstance which the Court of Criminal Appeals held to be suggestive of wrongdoing and a factor to be considered under the totality of the circumstances in a reasonable suspicion analysis. *See id.* at 276 (citing *Illinois v. Wardlow*, 528 U.S. 119, 125-26, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Here, Mr. McClenty's vehicle had already left Roxie's Bar when Officer Visser arrived, and had gone so far as to pull into a nearby gas station parking lot. (R.R. 23). Mark Allen testified that Mr. McClenty's vehicle was already out of his sight when Officer Visser's patrol car arrived. (R.R. 9). Unlike the facts in *Kerwick*, McClenty's departure was not in response to an approach by the police, further negating any support for a reasonable suspicion that McClenty was involved in unusual activity that was somehow related to crime. *C.f., Kerwick*, 393 S.W.3d at 276; *see also Martinez*, 348 S.W.3d at 923.

The *de novo* determination of reasonable suspicion is considered under the totality of the circumstances from an objective standpoint, disregarding the subjective intent of the detaining officer. *Garcia v.*

*State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The record here reveals an absence of any facts allowing an appellate court to determine the circumstances upon which Officer Visser could reasonably conclude that Mr. McClenty actually was, had been, or soon would have been engaged in criminal activity. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (citing *Garcia*, 43 S.W.3d at 530).

When a trial court is not presented with such facts, the detention cannot be "subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Ford*, 158 S.W.3d at 493 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). And "[w]hen such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." *Ford,* 158 S.W.3d at 493 (quoting *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)(alterations in citing authority).

Finally, Officer Visser opined that many of his previous dealings with Mark Allen and his service calls to Roxie's Bar had dealt with persons who were intoxicated. (R.R. 18, 21). It is true that law enforcement training or experience may factor into a reasonable-suspicion analysis. *Ford*, 158 S.W.3d at 494 (quoting *United*

14

*States v. Cortez*, 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The United States Supreme Court has stated, "objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Ford*, 158 S.W.3d at 494 (quoting *Cortez*, 449 U.S. at 419, 101 S.Ct. 690). "But reliance on this special training is insufficient to establish reasonable suspicion absent objective factual support." *Ford*, 158 S.W.3d at 494 (citing *Cortez*, 449 U.S. at 419, 101 S.Ct. 690). Though a report of possibly intoxicated persons in or near Roxie's Bar is nowhere in the record, it is of particular note that in his probable cause arrest affidavit made pertaining to Mr. McClenty's arrest, Officer Visser testimony revealed that he made no mention of possible intoxication as a supporting fact or inference for his initial detention of Mr. McClenty. (R.R. 22-24). Officer Visser was without specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that Mr. McClenty was, had been, or soon would be engaged in criminal activity. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880. Thus, the detention of Mr. McClenty was arbitrary, abusive, and exceeded tolerable limits. *Ford,* 158 S.W.3d at 493 (quoting *Brown*, 443

U.S. at 52, 99 S.Ct. 2637).

The trial court erred when it denied Mr. McClenty's motion to suppress. U.S. CONST. AMEND. IV; *see also Ford,* 158 S.W.3d at 494.

### E.     *Harm Analysis*

Having found error, this Court must conduct a harm analysis to determine whether the error calls for reversal of the judgment. *See* TEX. R. APP. P. 44.2. The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is rule 44.2(a)'s constitutional standard. *Hernandez v. State,* 60 S.W.3d 106, 108 (Tex. Crim. App. 2001); *Castro v. State*, 202 S.W.3d 348, 359 (Tex. App.–Fort Worth 2006, pet. ref'd). Accordingly, this Court must reverse the trial court's judgment unless it can determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. TEX. R. APP. P. 44.2(a). The harmless error inquiry under Rule 44.2(a) should adhere strictly to the question of whether the error committed in a particular case contributed to the verdict obtained in that case. *Snowden v. State*, 353 S.W.3d 817, 821 (Tex. Crim. App. 2011). A reviewing court is called on to examine whether the error adversely affected "the integrity of the process leading to the conviction." *Scott v. State,* 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). The primary concern

16

is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

The question is whether the trial court's denial of Mr. McClenty's motion to suppress contributed to McClenty's decision to plead guilty. *See, e.g., Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2010). The plea agreement in this case contain the handwritten notation that "Defendant reserves right to appeal denial of pretrial motion." (C.R. 18). Such a specific reference affirmatively demonstrates that the denial of his motion to suppress is what directly caused Mr. McClenty to decide to enter a guilty plea. Therefore, this Court cannot determine beyond a reasonable doubt that the trial court's erroneous denial of Mr. McClenty's motion to suppress did not contribute to his conviction or punishment. Tex. R. App. P. 44.2(a).

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Petitioner respectfully prays that this Court grant discretionary review and allow each party to fully brief and argue the issues before the Court of Criminal Appeals, and that upon reviewing the judgment entered below, that this Court reverse the opinion of the Second Court of Appeals and

17

reverse the conviction entered below.

Respectfully submitted,

/s/Kimberley Campbell
Kimberley Campbell
TBN: 03712020
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Fort Worth, Texas 76117
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorneys for Petitioner
Charles Jerome McClenty

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count for the portion of this filing covered by Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure is 4,416.

/s/Kimberley Campbell
Kimberley Campbell

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to counsel for the State's Prosecuting Attorney and the Tarrant County District Attorney by a manner compliant with the Texas Rules of Appellate Procedure, on this 27th day of April , 2015.

/s/Kimberley Campbell
Kimberley Campbell

## APPENDIX

1.     Opinion of the Second Court of Appeals.



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00184-CR

CHARLES JEROME MCCLENTY                                    APPELLANT

V.

THE STATE OF TEXAS                                             STATE

----------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1312934

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

After the trial court denied Appellant Charles Jerome McClenty's motion to suppress, he pleaded guilty to driving while intoxicated. In one issue, McClenty argues that the trial court abused its discretion by denying his suppression

---
[1]*See* Tex. R. App. P. 47.4.

motion because the arresting officer allegedly lacked reasonable suspicion to stop him. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mark Allen, the general manager of a bar, called 911 because a verbal altercation between McClenty and others at the bar "was about to turn violent." Allen described McClenty as the most irate person involved. Officer Matthew Visser responded to the call. From the dispatch, he understood that six or more persons were "possibly getting ready to fight or fight in the parking lot." Officer Visser knew Allen from Allen's prior calls involving intoxicated persons.

When Officer Visser arrived at the bar about two or three minutes after the call, he saw Allen standing outside pointing at a car that was leaving; Allen was pointing at McClenty's car, and he loudly told Officer Visser, "[T]hat guy right there. . . . [T]hat vehicle that's leaving right there." Officer Visser followed McClenty and stopped him by activating his lights and siren.

Officer Visser testified that he stopped McClenty to investigate whether a breach of the peace or an assault had taken place. When Officer Visser began talking with McClenty, he smelled a strong odor of alcoholic beverage and observed that McClenty's eyes were bloodshot and watery and that he was speaking "kind of thick-tongued." Officer Visser arrested McClenty for driving while intoxicated, and McClenty moved to suppress the evidence of his intoxication, arguing that Officer Visser lacked reasonable suspicion to stop his car.

2

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When, as here, there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

3

## IV. REASONABLE SUSPICION FOR AN INVESTIGATIVE STOP

### A. The Law on Reasonable Suspicion

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492.

### B. Application of the Law to the Facts

Officer Visser had specific, articulable facts that provided reasonable suspicion to believe McClenty had violated the law. Specifically, Officer Visser could have reasonably suspected that McClenty had assaulted someone[2] or had

---

[2]A person commits an assault by intentionally, knowingly, or recklessly causing bodily injury to another or by intentionally or knowingly threatening another with imminent bodily injury. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2014).

4

committed disorderly conduct.[3] Officer Visser received information that a fight was imminent, and there was a lapse of two to three minutes between his receipt of this information and his arrival at the bar. Upon arriving, Allen, whom Officer Visser knew from previous encounters, identified McClenty as a culprit. Because McClenty was leaving, Officer Visser faced the decision of letting him go while he stayed to clarify with Allen what had occurred or of stopping McClenty to investigate his involvement in the anticipated fight. As the court of criminal appeals observed, "The Fourth Amendment does not require an officer 'to simply shrug his shoulders and allow . . . a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.'" *State v. Kerwick*, 393 S.W.3d 270, 276 (Tex. Crim. App. 2013) (quoting *Adams v. Williams*, 407 U.S. 143, 145, 92 S. Ct. 1921, 1923 (1972)).

The facts of this case are similar to those in *Kerwick*. In *Kerwick*, an officer was dispatched to a bar in response to a reported fight. *Id.* at 272. On arriving,

---

[3]Officer Visser did not mention disorderly conduct (although he might have meant it when he said "breach of the peace" because breach of the peace is not a codified offense but is mentioned in the disorderly-conduct statute), but our determination of whether he had reasonable suspicion looks to whether any objective basis for the stop existed. *See Ford*, 158 S.W.3d at 492. A person commits disorderly conduct by intentionally or knowingly using abusive, indecent, profane, or vulgar language in a public place that tends to incite an immediate breach of the peace; abusing or threatening a person in a public place in an obviously offensive manner; making unreasonable noise in a public place; or fighting with another in a public place. *See* Tex. Penal Code Ann. § 42.01(a)(1), (4)–(6) (West Supp. 2014).

an "unidentified person," the owner of a damaged vehicle, pointed to Kerwick's car and said "[T]here they are right there. There they are, there they are." *Id.* The officer, responding to the unidentified person's complaint, approached Kerwick's car on foot, but the car began to move, and the officer ordered Kerwick, who was the driver, to stop. *Id.* When the officer talked to Kerwick, the officer smelled a strong odor of alcohol and observed that Kerwick had bloodshot and watery eyes. *Id.* The officer arrested Kerwick for driving while intoxicated, and Kerwick moved to suppress the evidence of intoxication on the grounds that the officer lacked reasonable suspicion to stop her. *Id.* at 271. The court of criminal appeals disagreed with Kerwick, holding that

> [i]n light of the damaged vehicle and the presence of several people outside of the bar after a report of several people fighting, and the clear identification of Kerwick's vehicle, the statement [by the unidentified person] provided a rational basis for [the Officer] to infer that the person whose vehicle was damaged was a potential crime victim and was identifying the person or persons responsible for the damage.

*Id.* at 276.

Like the officer in *Kerwick*, Officer Visser was dispatched to quell a disturbance at a bar, and upon arriving at the bar, someone directed him to follow a person seemingly responsible for the disturbance. The facts of this case are stronger than those in *Kerwick*, however, because Officer Visser knew the person directing him; in *Kerwick*, the officer followed the directive of an "unidentified person." *See id.* at 272. Here, Officer Visser knew Allen, had worked with him in the past relating to disruptive bar patrons, received the 911

6

call from Allen,[4] and recognized Allen when he arrived.  In other words, "The informant was known to him personally and had provided him with information in the past.  This is a stronger case than obtains in the case of an anonymous telephone tip."  *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972); *see Derichsweiler*, 348 S.W.3d at 914 (emphasizing the higher reliability of known citizen-informants).

Because the totality of the circumstances provided specific, articulable facts that, when combined with rational inferences from those facts, lead Officer Visser to reasonably conclude McClenty had engaged in criminal activity, we hold that the trial court did not abuse its discretion by denying his motion to suppress.  *See Ford*, 158 S.W.3d at 492; *see also Kerwick*, 393 S.W.3d at 276 (holding in similar but weaker circumstances that reasonable suspicion of criminal activity existed).  We overrule McClenty's sole issue on appeal.

## V. CONCLUSION

Having overruled McClenty's sole issue, we affirm the trial court's order denying his motion to suppress and the court's subsequent judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

---

[4]Reasonable suspicion is premised on the "cumulative information known to the cooperating officers," which includes a 911 police dispatcher. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

7

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 26, 2015

8